UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| MERIDIAN CAPITAL CIS FUND, *et al*, § § Appellants, § VS. § § CURTIS BURTON, § § Appellee. § § § § | CIVIL ACTION NO. 6:16-CV-039 |

## MEMORANDUM OPINION AND ORDER AFFIRMING IN PART AND REVERSING IN PART BANKRUPTCY COURT'S ORDERS

Before the Court are Appellants Meridian Capital CIS Fund, Meridian Capital International Fund, Fred Tresca, Randy Bates, and Branta II, LLC's appeal and Appellee Curtis Burton's cross-appeal of the Bankruptcy Court's June 11, 2016 Order of Partial Dismissal and Partial Remand and the Bankruptcy Court's August 15, 2016 Order of Partial Dismissal and Partial Remand. For the reasons that follow, the Bankruptcy's Court's Orders are **AFFIRMED** in part and **REVERSED** in part.

### I. Factual and Procedural Background

This case arises out of the Chapter 11 bankruptcy of Buccaneer Energy Limited ("Debtor"). Appellee is the former chief executive officer of the Debtor. He alleges that on March 3, 2014 he was terminated without cause as a result of the Appellants' unlawful behavior. Appellee contends that by January 2014, Meridian Capital CIS Fund and Meridian Capital International Fund (collectively "Meridian") not only were the Debtor's largest minority shareholder and primary creditor, but had also installed a board of directors at the Debtor that was responsive to them. He claims that in winter of 2013,

1

Meridian hired Tresca and Bates, employees of Branta II, LLC, to evaluate a proposed purchase of the Debtor's assets. According to Appellee, Tresca and Bates, in the course of their employment with Branta II, LLC, recommended to Meridian that Meridian replace the Debtor's management team with their own members. Appellee then alleges that Meridian induced the Debtor to terminate him. Several months after Appellee was terminated, the Debtor filed for Chapter 11 bankruptcy.

The Bankruptcy Court approved a settlement in the Chapter 11 case between the Appellants, the Debtor, and the Official Creditors' Committee. Under the settlement agreement, the Debtor and the Creditors' Committee released all Chapter 11 estate claims against the Appellants. After the Bankruptcy Court approved the settlement, Appellee filed suit against the Appellants in state court for tortious interference with contract, civil conspiracy, and assisting and encouraging. Appellants removed the case to the Bankruptcy Court, arguing that Appellee was enjoined under the Debtor's Plan Injunction from pursuing his suit because his claims were derivative claims owned by the Debtor that were released in the settlement. The Bankruptcy Court dismissed Appellee's civil conspiracy claim and remanded his tortious interference and assisting and encouraging claims. The parties appealed the Bankruptcy Court's rulings, and this Court heard argument on November 16, 2017.

## II. <u>Legal Standard</u>

Final judgments, orders, and decrees of a bankruptcy court may be appealed to a federal district court. 28 U.S.C. § 158(a)(1). "[A] bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed *de novo*." *In re SI*

2

*Restructuring, Inc.*, 542 F.3d 131, 135 (5th Cir. 2008) (citation omitted).

### III. <u>Analysis</u>

This appeal presents the question of whether the state law claims asserted by Appellee are property of the Debtor's bankruptcy estate. Appellants contend that the Bankruptcy Court erred in ruling that Appellee's claims of (1) tortious interference with his employment contract and (2) assisting or encouraging that interference belong to him. Appellee cross-appeals, arguing that the Bankruptcy Court erred in dismissing his civil conspiracy cause of action and denying his motion to remand that claim. The parties do not challenge the Bankruptcy Court's retaining of jurisdiction over Appellants' First Amended Counterclaim against Appellee. The parties focused their briefing and argument primarily on Appellee's tortious interference claim and appear to agree that his civil conspiracy and assisting and encouraging claims are dependent on the tortious interference claim.

A bankruptcy estate is comprised in part of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "All legal or equitable interests" include all "rights of action as bestowed by either federal or state law." *Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1149 (5th Cir. 1987) (citing *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1274 (5th Cir. 1983)). "If a cause of action belongs to the estate, then the trustee has exclusive standing to assert the claim." *Matter of Educators Grp. Health Tr.*, 25 F.3d 1281, 1284 (5th Cir. 1994) (citing *S.I. Acquisition, Inc.*, 817 F.2d at 1153-54)). If a cause of action belongs solely to a creditor of the estate, the trustee has no standing to bring the claim. *Id.* (citations omitted).

In *In re Seven Seas Petroleum, Inc.*, the Fifth Circuit provided the analysis for deciding whether a cause of action is the property of a bankruptcy estate:

> Whether a particular state-law claim belongs to the bankruptcy estate depends on whether under applicable state law the debtor could have raised the claim as of the commencement of the case. As part of this inquiry, we look to the nature of the injury for which relief is sought and consider the relationship between the debtor and the injury. "If a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate. Conversely, if the cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not have been asserted by the debtor as of the commencement of the case, and thus is not property of the estate."

522 F.3d 575, 584 (5th Cir. 2008) (internal citations omitted) (quoting *Educators*, 25 F.3d at 1284). "[I]t is entirely possible for a bankruptcy estate and a creditor to own separate claims against a third party arising out of the same general series of events and broad course of conduct." *Id.* at 585 (citing *Feld v. Zale Corp.*, 62 F.3d 746, 753 (5th Cir. 1995)). In making the determination of whether a cause of action belongs to the bankruptcy estate or a creditor, courts must review the allegations on their face and need not consider "whether the…allegations are sufficient to state a cause of action under Texas law, or…speculate as to what set of facts might ultimately be proven in support of recovery." *Id.* at 587.

"Texas law requires a party asserting a claim for interference with a contractual relationship to prove: (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) that the interference was a proximate cause of the plaintiff's damages; and (4) actual damage or loss." *Homoki v. Conversion Servs., Inc.*,

4

717 F.3d 388, 396 (5th Cir. 2013) (citing *Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 456 (Tex. 1998)). Appellee's Second Amended Complaint asserts facts that support each element of a claim for tortious interference.

Appellee had an employment contract with the Debtor, which he attached to his Second Amended Complaint. He alleges specific acts that may constitute willful and intentional interference with his employment agreement, such as Appellants' representing to the Debtor's board that Meridian would no longer invest or loan money to the Debtor as long as Appellee was the CEO. "To show tortious interference, a plaintiff is not required to prove intent to injure, but rather 'only that the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it.'" *Amigo Broad., LP v. Spanish Broad. Sys., Inc.*, 521 F.3d 472, 490 (5th Cir. 2008) (quoting *Sw. Bell Tel. Co. v. John Carlo Tex., Inc.*, 843 S.W.2d 470, 472 (Tex. 1992)). Appellee points to facts showing that Appellants' alleged interference was the proximate cause of his damages. For a plaintiff to establish that the interference was the proximate cause of his damages, he must show "the defendant took an active part in persuading a party to a contract to breach it." *Id.* (quoting *Davis v. HydPro, Inc.*, 839 S.W.2d 137, 139 (Tex. App. 1992)). Appellee also alleged that he suffered actual damages, which he claims is money owed to him by the contract for termination without cause.

Although Appellee's claims arise from facts that might have given rise to a lender liability claim by the Debtor, "it is entirely possible for a bankruptcy estate and a creditor to own separate claims against a third party arising out of the same general series of

events and broad course of conduct." *Seven Seas*, 522 F.3d at 585. "[T]here is nothing illogical or contradictory about saying that [the Appellants] might have inflicted direct injuries on both the [Appellee] and [the Debtor] during the course of dealings that form the backdrop of both sets of claims." *Id.* at 587. Appellee alleges that Appellants "tortiously interfered with his employment contract by applying economic pressure on the directors of Buccaneer, knowing that this would lead Buccaneer to fire him." As a result, Appellee was terminated and suffered a personal injury: contractual damages owed to him if he was fired without cause. In this case, the Debtor could not have brought a claim for tortious interference against Appellants. *See Riley v. SNECMA, Inc.*, 105 F. Supp. 2d 793, 800 (S.D. Ohio 1999). Since Appellee's civil conspiracy and assisting and encouraging claims are premised on the alleged tortious interference, those claims also belong to Appellee and are not property of the Debtor's bankruptcy estate. *See Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 583 (Tex. 2001).

Appellee has alleged a direct injury that is not derivative of the Debtor's, even if their claims arose out of the same general series of events and broad course of conduct. Therefore, Appellee's claims for tortious interference with contract, civil conspiracy, and assisting and encouraging belong to him. The Bankruptcy Court did not err in ruling that Appellee's claims of tortious interference with his employment contract and assisting or encouraging that interference were not property of the Debtor's bankruptcy estate. However, the Bankruptcy Court erred in dismissing Appellee's civil conspiracy cause of action and denying his motion to remand that claim. The Bankruptcy Court's retaining of jurisdiction over Appellants' First Amended Counterclaim against Appellee was not

6

brought before this Court for review.

Accordingly, the Court (1) affirms the Bankruptcy Court's June 11, 2016 and August 15, 2016 orders with respect to its granting of Burton's motion to remand his tortious interference with contract and aiding and encouraging claims and its denial of the Meridian and Branta parties' motion to dismiss those claims, and (2) reverses the Bankruptcy Court's June 11, 2016 and August 15, 2016 orders with respect to its denial of Burton's motion to remand his civil conspiracy claim and its granting of the Meridian and Branta parties' motion to dismiss that claim. The Court remands this case to the Bankruptcy Court for disposition and judgment consistent with these findings.

## IV. <u>Conclusion</u>

For the foregoing reasons, the Bankruptcy Court's June 11, 2016 Order of Partial Dismissal and Partial Remand and August 15, 2016 Order of Partial Dismissal and Partial Remand are **AFFIRMED** in part and **REVERSED** in part. This action is **REMANDED** to the Bankruptcy Court for judgment consistent with this Memorandum Opinion and Order.

ORDERED this \_6\_ day of December, 2017.

HAYDEN HEAD, JR.
SENIOR UNITED STATES DISTRICT JUDGE